UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH RENAUER,

    Plaintiff,

v.                                      Case No. 2:04CV73705

GENERAL MOTORS CORPORATION,      Honorable Patrick J. Duggan

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE AND DENYING DEFENDANT'S MOTION FOR SANCTIONS**

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on April 25, 2005.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

On September 23, 2004, Plaintiff Elizabeth Renauer [hereinafter "Plaintiff"] filed a three-count Complaint in this Court against Defendant General Motors [hereinafter "Defendant"] seeking damages and penalties under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104, *et seq*. Presently before the Court are Defendant's Motion for Summary Judgment and Defendant's Motion for Sanctions under FED. R. CIV. P. 11. Plaintiff, in her Response, requests an order of voluntary dismissal without prejudice and that Defendant's Motion for Sanctions be denied. A hearing was held

on April 20, 2005.

**I.  Background**

Plaintiff worked as an employee for General Motors Corp. ("GM") until she went on disability leave on January 23, 2001 due to her pulmonary sarcoidosis condition. From January 23, 2001 until January 2002, Plaintiff was paid $375 per month. While she was on disability leave, Plaintiff applied for total and permanent disability benefits. Plaintiff's claim for benefits was denied initially and on appeal.

On February 1, 2002, GM terminated Plaintiff's employment. At that time, as a result of having completed over ten years of credited service, Plaintiff was entitled to deferred vested benefits under the GM Retirement Program.

On December 11, 2003, Plaintiff, through her counsel, requested that GM supply her with an entire copy of the Summary Plan Description under which Plaintiff had made a claim for benefits. (Br. in Supp. of Pl.'s Resp. Ex. 1). In a letter dated April 22, 2004, GM responded to the request with copies of the denial letter and the summary plan description for active and deferred vested participants of the GM Retirement Program. The letter further indicated that because Plaintiff had been terminated, she was no longer eligible to apply for total and permanent disability benefits. (*Id.* at Ex. 2).

On May 10, 2004, Plaintiff elected to receive a lump sum distribution of her retirement benefits under the GM Retirement Plan. GM paid Plaintiff $32,304.74. In receiving the lump sum payment, the Plaintiff signed a release which read as follows:

> In relation to termination of my employment with General Motors Corporation, I hereby elect a lump sum distribution of the present value of my total monthly deferred retirement benefits under the General Motors Retirement Program for

2

> Salaried Employees. I understand this distribution is in full and final settlement of any and all retirement benefits that otherwise may be payable, either to me, or to any otherwise eligible survivor of mine. I accept such distribution in full, final and total satisfaction of any and all benefit entitlement that I, or any of my otherwise eligible survivors, may have under this Program, and I understand such distribution is irrevocable when made.

(Br. in Supp. of Def.'s Mot. Summ. J. Ex. C at 1).

On September 23, 2004, Plaintiff filed a three-count Complaint seeking: (I) recovery of disability benefits that were wrongfully terminated as of January 2002 based on the Defendant's breach of plan provisions; (II) recovery of disability benefits based on the Defendant's breach of its fiduciary duty under 29 U.S.C. § 1104(a)(1); and (III) requesting that the Court impose statutory penalties under § 1132(c) to compel the Defendant to provide plan information requested by Plaintiff.

On January 11, 2005, Defendant filed its Motion for Summary Judgment. In its Motion, Defendant raises three arguments: (1) Plaintiff cannot revoke the release regarding her benefit entitlement under the GM Retirement Program because she never tendered back the consideration she received; (2) An action for breach of fiduciary duty under ERISA, § 502(a)(3) cannot be maintained by Plaintiff because she has an adequate remedy under § 502(a)(1)(B); and (3) Plaintiff has no standing to pursue or maintain a claim for statutory penalties under § 502(c) of ERISA, 29 U.S.C. § 1132(c), because she was neither a participant nor a beneficiary at the time she commenced this action. Defendant also seeks sanctions pursuant to FED. R. CIV. P. 11 in a separate motion, filed January 11, 2005.[1]

---

[1] As required by Rule 11, Defendant originally sent Plaintiff its Motion for Sanctions on December 14, 2004. (Def.'s Mot. Sanctions at 5). Defendant then waited until January 11, 2005 to file its Motion for Sanctions.

3

Plaintiff, in her Response, asks that an order of voluntary dismissal without prejudice be entered in her favor. Plaintiff further requests that the Court deny Defendant's Motion for Sanctions because Plaintiff contends that at the time she filed her Complaint, she did not know that disability benefits were part of the GM Retirement Program.

## II.   Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present

4

significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. Applicable Law and Analysis

A. The Tender-Back Requirement

Defendant contends that Plaintiff cannot revoke the release regarding her benefit entitlement under the GM Retirement Program because she never tendered back the $32,304.74 she received. This Court has required a party to tender back the consideration he or she received before the party could challenge the release. *See Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 871-72 (E.D. Mich. 1998). In *Bittinger*, this Court considered whether retirees, who had brought an action under the Labor Relations Management Act and ERISA, were required to tender back the consideration they had received before suing for benefits under the plan. *Id.* at 871. The Court noted that "the [Sixth Circuit] unequivocally stated 'The tender back of consideration received for a signed release is an absolute prerequisite to avoidance of the release under Michigan and federal law . . . .'" *Id.* (quoting *Samms v. Quanex Corp.*, 99 F.3d 1139, 1996 WL 599821, *3 (6th Cir. 1996)). The Court concluded: "Accordingly, plaintiff Bittinger and the other members of the class who have failed to tender the consideration are barred from challenging the validity of the release." *Bittinger*, 83 F. Supp. 2d at 872; *see also Samms*, 99 F.3d 1139, 1996 WL 599821, at *4 (concluding that because the plaintiff did not return the consideration he received by the terms of the release, he could not challenge the release). Therefore, Plaintiff was required to return the $32,304.74 she received by the terms of the release before commencing the instant action.

5

Plaintiff does not deny that the tender back of consideration is a prerequisite for contesting the release. (Br. in Supp. of Pl.'s Resp. at 15). Instead, Plaintiff contends that at the time she received the lump sum payment, she did not know that this sum included her disability benefits. On May 10, 2004, when Plaintiff elected to receive a lump sum payment, the release she signed stated, in pertinent part: "I understand this distribution is in full and final settlement of any and all ***retirement benefits*** that otherwise may be payable, either to me, or to any otherwise eligible survivor of mine. . ." and "I accept such distribution in full, final and total satisfaction of any and all benefit entitlement that I, or any of my otherwise eligible survivors, may have under ***this Program*** . . . ." (Br. in Supp. of Def.'s Mot. Summ. J. Ex. C at 1 (emphasis added)). Plaintiff received this lump sum payment pursuant to the "GM Retirement Program." Plaintiff contends that when she filed her Complaint, she did not know that the release applied to her claim for disability benefits and thus, she had no reason to believe that she had to tender back the lump sum payment. Plaintiff asks the Court to grant her Motion for Voluntary Dismissal Without Prejudice so that she may tender back the $32,304.74, and then file her Complaint.

Plaintiff contends that the reason she did not know that the lump sum payment included disability benefits sooner is because Defendant failed to provide her with information she requested through her counsel regarding her disability benefit plan. (*See* Br. in Supp. of Pl.'s Resp. Ex. 1). However, Defendant's letter to Plaintiff's counsel stated: "This is in response to your request for information related to Elizabeth Renauer's application for Total and Permanent Disability retirement ***under the General Motors Retirement Program*** for Salaried Employees." (Br. in Supp. of Pl.'s Resp. Ex. 2 (emphasis added)). Defendant enclosed a

6

copy of its original denial letter dated December 12, 2002 and the summary plan description. In the denial letter, Defendant referred to "Section 5" of the disability provision. (*Id.* at Ex. 1). Plaintiff contends that "[n]o information regarding eligibility for disability benefits, including what the Defendant refers to as "Section 5", was included in this response."[2] (Br. in Supp. of Pl.'s Resp. at 5). Correspondence between Plaintiff and Defendant, however, quotes the pertinent excerpt from "Section 5." A letter dated August 2, 2001, denying Plaintiff's application for total and permanent disability benefits provides:

> Your application for total and permanent disability benefits under the General Motors Retirement Program for Salaried Employees has been reviewed. **Total and permanent disability is defined in the Eligibility for Retirement - Section 5 of the Retirement Program as follows**:
>
> "An employee shall be deemed to be totally and permanently disabled only if he is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the Corporation the employee is found to be wholly and permanently prevented from engaging in regular employment or occupation . . ."
>
> On the basis of the above definition and medical evidence submitted, the Corporation has determined that you are not totally and permanently disabled.

(Br. in Supp. of Def.'s Reply Ex. A (emphasis added)). This same language was also included in an August 27, 2002 letter to Plaintiff denying her appeal. (*Id.*).

Although Defendant did not provide Plaintiff with "Section 5" in response to the letter dated December 11, 2003, Defendant satisfied its obligation to explain benefit entitlement

---

[2] It is important to note that Plaintiff's counsel received exactly what he requested. In his letter, dated December 11, 2003, counsel requested: "a complete and entire copy of the administrative record" and "a complete and entire copy of the Summary Plan Description." (Br. in Supp. of Pl.'s Resp. Ex. 1). In its response letter, dated April 22, 2004, Defendant provided a copy of the denial letter, noting that "[t]his is the only administrative record available related to her application," and the summary plan description, entitled: "Your GM Benefits: A Handbook for Salaried Employees in the United States." (Br. in Supp. of Pl.'s Resp. Ex. 2).

under its ERISA-covered employee benefit plans by distributing a summary plan description, "Your GM Benefits- A Handbook for Salaried Employees." "Absent a specific employee-initiated inquiry, . . . a fiduciary is not obligated to seek out employees to ensure that they understand the plan's provisions as described in the explanatory booklet." *Electro-Mechan. Corp. v. Ogan*, 9 F.3d 445, 452 (6th Cir. 1993). Rather, a plan administrator satisfies its fiduciary obligation by distributing the summary plan description to employees. *See, e.g.*, *Cummings v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 387 (7th Cir. 1986).

Additionally, the application for total and permanent disability benefits Plaintiff filled out is entitled, "Application for Total and Permanent Disability Benefits, The General Motors Retirement Program for Salaried Employees." (Br. in Supp. of Def.'s Reply Ex. A). Therefore, this Court believes that the correspondence between Plaintiff and Defendant and the title of the application should have apprised Plaintiff that disability benefits were part of the GM Retirement Program and that when Plaintiff signed a release relinquishing "any and all retirement benefits," this included disability benefits.

Furthermore, Defendant contends that Plaintiff's counsel should have understood that disability benefits were included in retirement benefits. Here, Defendant provided Plaintiff's counsel with the summary plan description, "Your GM Benefits- A Handbook for Salaried Employees." (Br. in Supp. of Pl.'s Resp. Ex. 2). The booklet included the following language: "**Eligibility** . . . If you have 10 or more years of credited service, you may retire at any age prior to age 65 if totally and permanently disabled." (*Id.* at 90). Moreover, the booklet provided: " If you retire because of total and permanent disability, the temporary benefit will be paid only if you submit evidence satisfactory to GM that you are not eligible

8

for [Social Security Disability Insurance Benefits] (SSDIB). A retroactive SSDIB award creates an overpayment of any temporary benefit that was paid for the same period of disability." (*Id.* at 93). In this Court's opinion, even though counsel never read "Section 5" of GM's retirement program text, this language included in the summary plan description should have apprised Plaintiff's counsel that disability benefits were included in retirement benefits.

Plaintiff has asked the Court to grant her Motion for Voluntary Dismissal so that she may tender back the release and then file her Complaint. Defendant contends that, because it has incurred the expense and burden of filing a motion for summary judgment and a motion for sanctions, allowing Plaintiff to tender back the money and then file her Complaint would prejudice Defendant.

In this Court's opinion, allowing the Plaintiff to tender back the sum of $32,304.74 and file her Complaint would be futile. As set out below, the Court believes that Plaintiff lacks standing to pursue any claims pursuant to § 502 of ERISA because when Plaintiff signed the release, she was no longer a participant as required by § 502(a). In addition, Plaintiff's claim for benefits has no merit because she received her full entitlement to benefits when she signed the release. Plaintiff has failed to allege that the release was not valid. Moreover, the Court does not believe that Plaintiff will be able to challenge the validity of the release. Therefore, Plaintiff's Motion for Voluntary Dismissal Without Prejudice is denied.

  B. <u>Plaintiff's Action for Breach of Fiduciary Duty</u>

In addition, Defendant contends that Plaintiff's action for breach of fiduciary duty under § 502(a)(3) of ERISA cannot be maintained by Plaintiff because she has an adequate

9

remedy under § 502(a)(1)(B). Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B) provides in pertinent part:

> (a) Persons empowered to bring a civil action.
> A civil action may be brought–
> (1) by a participant or beneficiary–
>
> * * *
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan
> * * *
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or any terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (II) to enforce any provision of this subchapter or the terms of the plan . . .

The Supreme Court has explained that when a remedy is available under another section of ERISA, equitable relief under § 502(a)(3) is not appropriate:

> [T]he statute authorizes "*appropriate*" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others. . . . Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S. Ct. 1065, 1079 (1996) (internal quotations and citations omitted) (emphasis in original). Similarly, the Sixth Circuit has held that a party who had a claim under § 502(a)(1)(B) may not pursue a claim under § 502(a)(3). *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

Because Plaintiff elected to take a lump sum payment on May 10, 2004, Plaintiff's claim for total and permanent disability benefits under the GM Retirement Program arises,

if at all, under § 502(a)(1)(B) of ERISA, as a claim "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." As a result, Plaintiff cannot maintain a claim for breach of fiduciary duty under § 502(a)(3).

   C.  Plaintiff Lacks Standing

Section 502(a) of ERISA provides that a civil action may be brought by "a participant or beneficiary." Plaintiff's Complaint also seeks statutory penalties pursuant to § 502(c) of ERISA, 29 U.S.C. § 1132(c), alleging that Defendant did not respond to Plaintiff's request for plan documents until April 22, 2004. (Compl. at ¶ 25). Section 502(c) provides in pertinent part:

> (c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form
>
> (1) Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal; and the court may in its discretion order such other relief as it deems proper.

However, Plaintiff has no standing to pursue or maintain a claim for statutory penalties under § 502(c) because she was neither a participant nor beneficiary at the time she commenced this action as required by § 502(a)(1). Whether a plaintiff is a plan participant or beneficiary is determined as of the time the plaintiff files the lawsuit. *Curtis v. Nev. Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir. 1995). Plaintiff, at the time the instant action

was filed, was not a "participant" or a "beneficiary." On May 10, 2004, Plaintiff received $32,304.74 from the GM Retirement Program. Plaintiff filed her Complaint on September 23, 2004. Therefore, Plaintiff has no standing to bring suit under § 502 of ERISA. *See, e.g.*, *Winchester v. Pension Comm. of Michael Reese Health Plan*, 942 F.2d 1190, 1192-93 (7th Cir. 1991) (concluding that where the plaintiff had received a lump sum payment releasing her interest in the plan, she was no longer a participant entitled to bring a civil action under ERISA).

An exception to the general rule that a person who terminates his right to belong to a plan cannot be a participant arises "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." *Swinney v. General Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995). In *Swinney*, however, the plaintiffs contended that GM misrepresented their benefit entitlement, thereby causing them to take a severance payment making them ineligible for greater benefits that subsequently became available. *Id.* at 520. In contrast, here, Plaintiff has not alleged that GM made any misrepresentations to her, thus, Plaintiff does not fall within the exception and cannot be a participant. Therefore, Plaintiff has no standing to bring a civil action under § 502 of ERISA.

D. <u>Rule 11 Sanctions</u>

Finally, Defendant seeks sanctions against Plaintiff's counsel pursuant to FED. R. CIV. P. 11. Rule 11 provides, in pertinent part:

> By representing to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge,

12

information, and belief, formed after an inquiry reasonable under the circumstances, --

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The Sixth Circuit asks "whether the individual attorney's conduct was reasonable under the circumstances," to determine whether to impose Rule 11 sanctions. *Mann v. G & G Manuf., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). "A Rule 11 sanction is appropriate when a pleading is frivolous, i.e., both baseless and made without a reasonable and competent inquiry." *Knestrick v. Int'l Bus. Machs. Corp.*, 945 F. Supp. 1080, 1082 (E.D. Mich. 1996). The relevant question is whether a competent attorney, "after appropriate investigation, would have reasonably believed that the claim was well grounded in fact and law." *Id.*

Plaintiff contends that she had no way of knowing that her disability benefits were part of the GM Retirement Program because Defendant did not provide her with the requested plan documents. Therefore, Plaintiff contends that she did not know until after she filed her claim that she must tender back the lump sum payment.

Plaintiff's counsel claims that it was not until defense counsel's letter of December 2, 2004, that he became aware that the disability benefits were part of the GM Retirement

13

Program. The Court believes that Plaintiff, through her prior correspondence with Defendant in seeking total and permanent disability benefits, was on notice that disability benefits were part of the GM Retirement Program. In addition, in this Court's opinion, upon receiving the summary plan description containing language referring to "total and permanent disability benefits," Plaintiff's counsel should have known that disability benefits were part of the GM Retirement Program.

However, this Court does not believe that counsel's conduct, under the circumstances set out above, was so unreasonable as to warrant sanctions. When Plaintiff's counsel learned that the release applied to Plaintiff's total and permanent disability benefits, he sought to tender back the $32,304.74 and file the Complaint again. (*See* Br. in Supp. of Pl.'s Resp. Ex. 6). Moreover, counsel contends that he believed Plaintiff had standing as a "participant" pursuant to § 502(a)(1) under the exception set out in *Swinney v. General Motors Corp.*, 46 F.3d 512 (6th Cir. 1995). Although the Court does not agree that Plaintiff has alleged any misrepresentation on the part of Defendant, let alone a misrepresentation that rises to the level set out in *Swinney*, the claims were not so frivolous as to warrant sanctions.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Voluntary Dismissal Without Prejudice is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions is **DENIED**.

 

                                                      _____
s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

David M. Davis, Esq.
Matthew L. Turner, Esq.